The Chancellor.
This bill is filed for the purpose of obtaining an injunction against the Paterson Machine Company, and for the appointment of receivers. The bill charges the company to have become insolvent, and to have suspended business for want of funds to carry it on. The complainants are,, one stockholder to the amount of one quarter of the whole stock, and sundry creditors, who have claims to the amount of two or three thousand dollars, as they allege, for their work and labor; the parties who are made defendants, are the corporation and its directors. The defendants have answered by a joint and several answer, and it is denied on the part of the corporation, that the company is insolvent, or that they suspended business-for want of funds, but that from motives of prudence alone, on or about the twenty-first of May last, they stopped their works-for a time, intending to set them in motion again as soon as fresh orders and a new demand for their manufactures should justify it. This being the answer of the corporation alone, is not under oath, but under the seal of the company. On this, part of the case, the remaining defendants answer, that they believe the assets and property of the company, if prudently managed, are much more than sufficient to pay all its debts. Thus it appears upon the pleadings, there is a wide difference between the parties.
The proceedings are founded on the act of eighteenth of February, eighteen hundred and twenty-nine, entitled “ An act to prevent frauds by incorporated companies,” and the bill must be- *305 sustained under the provisions of that act, or the suit fails. There are other matters introduced incidentally, but it is by force of this act alone, that the complainants by their bill can have the aid of this court.
Whether this corporation be insolvent or not, is the primary and all important question, and this must ever be a delicate matter to settle. Many of the witnesses examined to the point express nothing more than an opinion on the subject, without referring to any facts from which such opinion is formed. Such evidence is entirely insufficient, and can never form the basis for the action of the court. The facts must be examined, and an estimate of the actual condition of the company ascertained. If it be a balancing question, and the course of those who manage its affairs appears to be upright and just, the doubt should De resolved in favor of the rights of the company. It would be unwise, and against public policy, to seek an occasion for interference with any corporation, so long as they are striving against adversity with an honest purpose, unless their case is hopeless, or their course of action so unfair as to jeopardise the interests of creditors and the public.
I have felt it to be an incumbent duty, in investigating this case, to look at the condition of the company with a liberal eye, and if possible not to interfere with its concerns. I had hoped the evidence would have justified me in not interposing; but I am constrained to come to a different conclusion. This conclusion is forced upon me, more by the course taken by the directors and managers in reference to the affairs of the company, than from the situation of the property as it originally stood.
The charter for this company was obtained on the twenty-fourth of January, eighteen hundred and twenty-seven, with a capital not to exceed one hundred thousand dollars, and with power to commence business as soon as twenty thousand dollars should be subscribed and paid, or satisfactorily secured. The stock is now held by five persons, who are also the directors. In fact, four persons hold it in equal parts, except four shares, which are transferred to a fifth individual, the act requiring five *306 directors, all of whom must be stockholders. The amount of 3tock subscribed is twenty-five thousand dollars, which at twenty-five dollars a share, give one thousand shares.
The property of the company consists of a valuable real estate in the town of Paterson, with buildings, machinery and appendages, suited to> the business conducted by the company; a quantity of finished and unfinished manufactured articles, and assets to the amount of about four thousand dollars. The indebtedness of the company is about forty-three thousand dollars, of which not far from twenty thousand dollars is secured by mortgage on the real estate. The only possible question arises upon the value to be placed on the real estate, machinery and fixtures. Are they worth more than the twenty thousand dollars, for which they aré mortgaged í The evidence here is very defective, and it is impossible, from the meagre testimony on the subject, to arrive at any very accurate conclusion. There should have been estimates made of its present value by competent judges. The defendants do not state the value of the real estate at this time, but say it cost about forty thousand dollars. Nothing can be more unsatisfactory than to judge of the present value of real estate and improvements, by their cost a few years since. But in this case, it seems by the minutes, that the real estate was purchased by the company of the four persons who hold the stock, and who were at the time the directors. The price for the original purchase was fixed at twenty thousand dollars, but it was in truth, a company buying of itself, and therefore forms no test of value, even at that time. I am firmly convinced that the real estate and fixtures are covered by mortgages for as much as will ever be realized from them. It must be superadded to this estimate, that the company have leased the premises for a small rent, for five years, subject to incumbrances. If I am right in this, it decides the insolvency of the company, for the remaining property, consisting of machinery, finished and unfinished, raw material, stock on hand, and indeed all the personal property not embraced in the mortgages, was sold by the company, (including the rent for five years of the *307 .mill and machinery,) at fifteen thousand dollars. This sum, with four thousand dollars of other assets, as estimated, will still (should the mortgages be paid out of the real estate) not be sufficient to liquidate the demands against the company, by several thousand dollars. Firmly as I am persuaded from these facts, that the company is insolvent, yet, had they been pursuing a steady course in business, I would not have disturbed them. But what is the course pursued % The company stopped their business in May last. The directors, or some of them, have repeatedly delared to creditors, when they asked for their pay, that the company was insolvent. The creditors Rave been denied payment of their debts, some have taken in payment goods at prices beyond what they could possibly realise from them, others have prosecuted suits at law, and executions are now hanging over the company in the hands of the sheriff of Passaic. "With a company thus circumstanced, and with a mortgage of twenty thousand dollars upon their real estate and fixtures, the directors, who are also the owners of the stock, at a meeting held on the twelfth of January last, a short time before the filing of this bill, and at which meeting all the directors were present, (except the complainant, Benjamin Brundred,) agreed to lease the real estate for five years, and to sell all the personal property for fifteen thousand dollars, to Daniel K. Allen and Josiah Shippey, two of the directors. If this proceeding be lawful and binding, what remedy can a creditor have for his money ? The real estate is mortgaged for its value, and if not, there is a lease in addition upon it, for five years, and two of the directors own all the personal property. Tolerate this proceeding, and a corporation will be the readiest and simplest form of fraud known to the business community. It will be observed, that this is dealing by the wholesale, with the property. It effectually puts it beyond the reach of any creditor, and by the very simple process of two of the directors, who represent a majority of the stock present, becoming the purchasers. It is nothing more than the directors placing all the property of the company, when pressed for debts, into the individual hands of some of its direo *308 tors. But it seems a few days after this, at another meeting of-the board, held on the eighteenth of January last, Josiaf Shippey, one of the purchasers, for some reason, desired to re. scind the contract for purchasing the personal property, and b was done; and at a meeting of the directors on the next day the same contract which was made by the company with Danie X. Allen and Josiah Shippey, was agreed to be made by the company with Daniel X. Allen and William Shippey. The} could thus make and unmake a contract at pleasure; they had. ,the power in their own hands, and had only to will it, according-to this doctrine, and the property would pass beyond the reach of creditors. It is curious, in this connection, to observe the terms of payment fixed between these parties. The considera tion was to be paid by the directors who purchased, either in money or in the bills payable, or other outstanding debts of the company, at par value. This clause would enable the two directors who purchased the property, to buy in the debts of the-company at a reduced price, and pay their own with them at par.
The directors, by this course of action, do in effect declare the company insolvent, and put it out of its power to carry on business. If it was designed to renew the business, why lease the workshops and machinery for five years ? Why dispose of all the tools and implements of trade, and all the articles of' manufacture in hand, whether finished or unfinished ? If this company was embarrassed, the creditors were entitled to .have the property applied, as far as it would go, in a fair course of liquidation.
But there is another transaction by this company, which I ¡should not pass unnoticed. In April, eighteen hundred and forty-two, only the month preceding the date of their suspension, they declare a dividend of twenty-four thousand dollars, 01., a capital of only twenty- five thousand dollars. This was of course given to the directors themselves, for they owned all the stock. They say in their answer, that this dividend was made from the profits of the concern, and that they entertained then *309 no idea of stopping business. But it was a most extraordinary •dividend. The company owed large sums of money, and besides, they appeared to have bad no funds to pay with. Brundred and J. Shippey’s shares of the dividend were paid by giving up and cancelling obligations which the company had .against them, Del Hoyo and W. Skippey received the notes ol the company for their shares, and Allen received a draft on Del Hoyo for his share, which draft Del Hoyo paid and charged the company. The result of all this was, that the company wa? weakened by the amount of the dividend, and the less able, by that sum, to pay its debts.
I have not looked into the affidavits made by the complainants since filing the bill, because it appears to me improper to allow them to be read. They have the opportunity at the time the bill is filed, of subjoining their affidavits, and they should do so and file them with the bill.
In view of all these facts of the case, and particularly from the position in which the directors have placed the company and its property by their own action, I see no alternative between rendering the act on this subject nugatory, and the appointment of receivers.
The order will be for a fuL injunction under the act, and appointment of receivers.
Order accordingly.